**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff and the Putative Class*

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO CHAUCA, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>ROWDY BEVERAGE, INC.,<br><br>              Defendant. | Case No.  **'23 CV 0730 BEN BGS**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sergio Chauca ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.       This is a putative class action against Defendant Rowdy Beverage, Inc. ("Defendant").

2.       Defendant formulates, manufactures, advertises, and sells "Rowdy Power Burn" energy drink products (the "Products").[1]

3.       Defendant markets its Products in a systematically misleading manner by misrepresenting that their Products do not contain preservatives. Because Defendant's sales are driven by health-conscious consumers seeking products that are free from preservatives, Defendant prominently displays on the front label of the Products that they contain "NO PRESERVATIVES."

4.       Notwithstanding this promise to consumers, however, Defendant's Products contain "citric acid" and/or "ascorbic acid" – two ingredients the FDA recognizes as preservatives in food products. As such, Defendant has engaged in widespread false and deceptive conduct by misrepresenting the true nature of its Products.

5.       Plaintiff brings this action on behalf of a nationwide class of consumers who purchased Defendant's Products.  Plaintiff also brings this action on behalf of a class of consumers who purchased Defendant's Products in New York.

_____

[1] The Products encompass all of Defendant's canned and bottled sparkling juices that contain "citric acid" and/or "ascorbic acid," including: (1) Mango Dragonfruit; (citric acid and ascorbic acid) (2) Pineapple Passionfruit (citric acid and ascorbic acid); (3) Pink Lemonade (citric acid and ascorbic acid); (4) Watermelon (citric acid and ascorbic acid).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## THE PARTIES

6.      Plaintiff Sergio Chauca is a citizen of New York, residing in Bronx, New York.  Plaintiff purchased Defendant's Products for his personal use within the applicable statute of limitations, with his most recent purchase taking place on or about December of 2022. Plaintiff Chauca made these purchases from grocery stores located in New York, New York. Prior to making his purchases, Plaintiff saw that the Products were labeled and marketed as containing "No Preservatives." Plaintiff relied on Defendant's representations when he decided to purchase the Products over comparable and less expensive energy drinks. Plaintiff saw those representations prior to and at the time of his purchases and understood them as a representation and warranty that the Products did not contain any preservatives. Plaintiff relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of his bargains, in that he would not have purchased the Products on the same terms had he known that those representations were not true. In making his purchases, Plaintiff paid a substantial price premium due to the false and misleading "No Preservatives" claims. Plaintiff, however, did not receive the benefit of his bargains because the Products were not, in fact, preservative-free because they contained citric acid and ascorbic acid – two ingredients recognized by the FDA as preservatives.

7.      Defendant Rowdy Beverage, Inc, is a Delaware corporation with its corporate headquarters and principal place of business located at 10531 4S Commons Drive, San Diego, CA 92127.

8.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

10.     This Court has general jurisdiction over Defendant because Defendant maintains its principal place of business within this District.

11.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

**FACTUAL ALLEGATIONS**

***Overview of Defendant's False Preservative Claims***

12.     Defendant advertises and displays on the front labels of the Products that they contain "No Preservatives," thereby misleading reasonable consumers into believing that the Products are free from preservatives. However, the Products contain well-known and well-documented preservatives: citric acid and/or ascorbic acid.  Defendant's most recent labeling of the Products, along with their ingredient panels, are depicted on the following page:

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED








13.     The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

14.     The FDA also classifies and identifies citric acid and ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how citric acid and ascorbic acid are used as preservatives in beverages.[2]

15.     The FDA's view of this matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[3]

16.     Citric acid functions in beverages as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering a juice product's pH level, thereby combatting and sequestering microorganisms. Citric acid serves these functions regardless of whether it is being added as a flavoring agent.[4]

---

[2] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed November 30, 2022)

[3] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated*
(Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (last accessed November. 30, 2022)

[4] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.

17.     Industry participants also recognize that citric acid functions as a preservative. For example, one food additives supplier states: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[5]

18.     Based on the foregoing, Defendant's use of citric acid in its Products renders their "No Preservatives" representation false and misleading. This is true even if Defendant's subjective intention was to add citric acid to impart taste/tartness to the Products—a statement that some manufacturers have recently added to their labeling as a pretext, but is entirely missing on the Product's labeling. This conclusion is buttressed by the fact that citric acid can function as a preservative even when it is used only in trace amounts.[6]

19.     To make matters worse, Defendant also includes ascorbic acid as an ingredient in its Products.[7] Ascorbic acid is a chemically modified form of vitamin C, which, pursuant to FDA regulations, is commonly used in foods as a preservative. 21 C.F.R. § 182.3013.

20.     Ascorbic acid, like citric acid, functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness. Although Defendant identifies ascorbic acid as a source of vitamin C, they do so within the ingredient list of the Products rather than their nutritional facts panel—thus falling outside the ambit of FDA regulations. 21 C.F.R. § 101.9(c)(8)(v).

---

[5] FBC Industries, Inc., *Citrates*, https://fbcindustries.com/citrates/ (last accessed November 30, 2022).

[6] *See* Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food* CRC Press, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed November 30, 2022).

[7] Except its Sparkling Blackberry Lemonade flavor.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

21.     Tellingly, Defendant's Products are primarily composed of teas and other extracts that are prone to spoliation.

22.     Furthermore, ascorbic acid, like citric acid, can have preservative effects even when used in low amounts.[8] Based on the foregoing, Defendant's use of ascorbic acid—especially in combination with citric acid—supports the conclusion that the Products indeed contain preservatives.

23.     In any event, even if the Products' citric acid and/or ascorbic acids do not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration,") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.")[9]; Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving") (emphasis added).[10]

**Defendant Capitalizes on Consumer's Demand for Preservative-Free Foods**

24.     By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health …84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five

---

[8] *Id.*

[9] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[10] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[11]

25.     According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.[12]

26.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[13] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

27.     Had Defendant not made the false, misleading, and deceptive misrepresentations and omissions alleged herein, Plaintiff and the proposed class members (1) would not have purchased Products; (2) would not have paid as much as they did for those purchases; or (3) would have purchased less expensive energy drink that do not claim to contain "No Preservatives."

28.     Although Defendant is in the best position to know what content it placed on its website and in marketing materials during the relevant timeframe, and the knowledge that Defendant had regarding the false and defective nature of the Products as well as its failure to disclose the existence of those defects and

---

[11] *See, Free-From Food Trends - US - May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

[12] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[13] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

misrepresentations to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

29. **WHO:** Defendant, Rowdy, made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that they contain "No Preservatives."

30. **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain "No Preservatives." Defendant misrepresented to Plaintiff and the proposed class members that the Products contain "No Preservatives" when in fact they contain two ingredients – citric acid and ascorbic acid – that preserve or have the tendency to preserve.

31. **WHEN:** Defendant made material misrepresentations and/or omissions during the putative Class periods, including prior to and at the time Plaintiff and the proposed class members purchased the Products, despite its knowledge that the Products do not conform to their purported qualities.

32. **WHERE:** Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions on the labeling of the Products' packaging, website, and through marketing materials.

33. **HOW:** Defendant made material misrepresentations and/or failed to disclose material facts regarding the Products' inclusion of preservatives, namely that the Products contain "No Preservatives" when in fact they do.

34. **WHY:** Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, the proposed class members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Products to tens of thousands of consumers.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

35.     **INJURY:** Plaintiff and the proposed class members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations and/or omissions

## CLASS ACTION ALLEGATIONS

36.     *Class Definition*.  Plaintiff seeks to represent a class defined as all persons in the United States who, within the applicable statute of limitations period, during purchased Defendant's Products for personal, family or household purposes, and not for resale defined as follows (the "Class").

37.     Plaintiff also seeks to represent a subclass defined as all persons in the state of New York who, within the applicable statute of limitations period, during purchased Defendant's Products for personal, family or household purposes, and not for resale defined as follows (the "New York Subclass").

38.     Specifically excluded from the Classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

39.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

40.     *Numerosity.*  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, the Classes comprise at least tens of thousands of consumers throughout the United States.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

41.     *Commonality and Predominance*.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only

individual Class members.  Common legal and factual questions include, but are not limited to: (a) the true nature and presence of preservatives in the Products; (b) whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are misleading; (c) whether Defendant's conduct alleged herein violated the consumer protection statutes of the Class; (d) whether Defendant's conduct alleged herein constitutes unjust enrichment; (e) whether Defendant's conduct constitutes negligent omission; (f) whether Plaintiff and the Class members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; (g) whether Plaintiff and the Class Members are entitled to statutory damage; and (h) whether Plaintiff and the Class Members are entitled to attorney's fees and costs.

42. **_Typicality._**  The claims of Plaintiff Chauca are typical of the claims of the Class in that Plaintiff and the Class were exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

43. **_Adequacy_**.  Plaintiff will fairly and adequately protect Class Members' interests.  Plaintiff has no interests antagonistic to Class Members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

44. **_Superiority_**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, _inter alia_, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

45.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

46.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

47.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violations of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

48.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

49.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

50.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

51.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

52.     Plaintiff and the New York Subclass Members are consumers who purchased Defendant's Products for their personal use.

53.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they contain "No Preservatives." Despite that representation, however, the Products contain well-documented preservatives: citric acid and ascorbic acid.

54.     The foregoing deceptive acts and practices were directed at consumers.

55.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Products and/or pay more for them under the false— but reasonable—belief that the Products contained "No Preservatives" when they did.  By advertising prominently that the Products contained "No Preservatives", Defendant proves that information about their preservative content is material to consumers.  If such information were not material, Defendant would not feature it prominently on the front label of every Product's package.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Products to unsuspecting consumers across New York.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

56.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Members of the New York Subclass were injured in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the Products' preservative content were truthful.

57.     Plaintiff and the New York Subclass Members seek to recover their actual damages or fifty dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violations of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

58.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

59.    Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

60.    Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that they contain "No Preservatives." Despite that representation, however, the Products contain well-documented preservatives: citric acid and ascorbic acid.

61.    Plaintiff has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff purchased the Products for his own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Products contained "No Preservatives."  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

62.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

63.    Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

64.    As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Members of the New York Subclass were injured in that they: (1) paid money for Products that were not

what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the Products' preservative content were truthful.

65.　As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the truth that the Products in fact contained preservatives.

66.　Plaintiff and the New York Subclass Members seek to recover their actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**COUNT III**
**Violations of State Consumer Protection Statues[14]**
**(On Behalf of Plaintiff and the Nationwide Class)**

67.　Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

---

[14] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-

68.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

69.     The Consumer Protection Statutes of the Nationwide Class Members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

70.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they contain "No Preservatives." Despite that representation, however, the Products contain well-documented preservatives: citric acid and/or ascorbic acid.

71.     The foregoing deceptive acts and practices were directed at consumers.

72.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

73.     As a result of Defendant's deceptive practices, Plaintiff and the Class Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the truth that the Products in fact contained preservatives.

74.     Plaintiff and the New York Subclass Members seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

---

5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## COUNT IV
### Breach of Express Warranty[15]
### (On Behalf of Plaintiff and the Nationwide Class)

75.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

77.     On the Products' labeling and marketing Defendant expressly warranted that the Products contain "No Preservatives."

78.     Those statements became the basis of the bargain for Plaintiff and the Class members because they are factual statements that a reasonable consumer would consider material when purchasing a healthy energy drink.

79.     Defendant breached these express warranties because the Products contain two well-known preservatives: citric acid and ascorbic acid.

80.     On January 31, 2023, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising

---

[15] Code of Ala. § 7-2-313; Alaska Stat. § 45.02.313; A.R.S. § 47-2313; A.C.A. § 4-2-313; Cal. Comm. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Fla. Stat. § 672.313; O.C.G.A. § 11-2-313; H.R.S. § 490:2-313; Idaho Code § 28-2-313; 810 I.L.C.S. 5/2-313; Ind. Code § 26-1-2-313; Iowa Code § 554.2313; K.S.A. § 84-2-313; K.R.S. § 355.2-313; 11 M.R.S. § 2-313; Md. Commercial Law Code Ann. § 2-313; 106 Mass. Gen. Laws Ann. § 2-313; M.C.L.S. § 440.2313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2-313; Neb. Rev. Stat. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; R.S.A. 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; II. O.R.C. Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. Rev. Stat. § 72-3130; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. + Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2- 313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 6A.2-313; W. Va. Code § 46-2-313; Wis. Stat. § 402.313; and Wyo. Stat. § 34.1-2-313

17

Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

81.    As a direct and proximate result of Defendant's breach of its written warranties, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

### COUNV V
**Unjust Enrichment / Restitution**

82.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

83.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant under the laws of the State of California.

84.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

85.    Plaintiff and the Class conferred benefits on Defendant by purchasing the Products.

86.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and class members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Preservatives" despite their use of two ingredients – citric acid and ascorbic acid –classified by the FDA as preservatives. These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Products at all, or on the same terms, if the true facts were known.

87.    Plaintiff and the Class members are, therefore, entitled to restitution in the form of disgorgement of the revenues derived from Defendant's sale of the Products.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

88.     As a direct and proximate result of Defendant's actions, Plaintiff and class members have suffered in an amount to be proven at trial.

89.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Product.

90.     Without compensation for the full premium price of the Products, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

91.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and the Class Members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

92.     Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent misrepresentations.

## COUNT VI
### Negligent Misrepresentation

93.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant under the laws of the State of California.

95.     As discussed above, Defendant misrepresented that the Products contain "No Preservatives" despite having two ingredients – citric acid and ascorbic acid – that are classified by the FDA as preservatives.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

96.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

97.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Products and their advertising.

98.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

99.     Plaintiff and Class Members would not have purchased the Products at all, or on the same terms, if the true facts had been known.

100.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## <u>COUNT VII</u>
### Fraud

101.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

103.    As discussed above, Defendant misrepresented that the Products contain "No Preservatives" despite having two ingredients – citric acid and ascorbic acid – that are classified by the FDA as preservatives.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

104.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

105.   The fraudulent actions of Defendant caused damage to Plaintiff and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Chauca, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.   For an order declaring Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.   For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  April 20, 2023                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:   _/s/ Frederick J. Klorczyk III_

                                          Frederick J. Klorczyk III (SBN 320783)
                                          888 Seventh Avenue
                                          New York, NY  10019

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED